IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KATHLEEN ROCHE, D.C., individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL NO. 07-367-GPM |
| COUNTRY MUTUAL INSURANCE COMPANY, d/b/a Country Companies, a/k/a Country Casualty Insurance Company, | ) ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This matter is before the Court on the order to show cause why this case should not be remanded for lack of subject matter jurisdiction entered June 12, 2007 (Doc. 11). Defendant Country Mutual Insurance Company ("Country") has responded to the order (Doc. 13). In its response to the order, Country has responded also to the motion for remand to state court brought by Plaintiff Kathleen Roche (Doc. 12). For the following reasons, this action is **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, for lack of subject matter jurisdiction.

## BACKGROUND

This case is a putative class action that was filed in Illinois state court on April 17, 2007, then removed by Country to this Court. Federal subject matter jurisdiction is alleged on the basis of 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). Roche, a chiropractor based in Belleville,

Illinois, alleges that in 2003 she became a member of a preferred provider organization ("PPO") network administered by Corvel Corporation ("Corvel"). *See* Class Action Complaint ("Compl.") ¶ 7, ¶ 45.[1] Although Roche's PPO contract with Corvel is not before the Court, Roche alleges that under the contract she agreed to furnish health care services at discounted rates, while Corvel agreed to market Roche's services to third-party payors for health care services. *See id.* ¶ 45.

Roche alleges that in 2005 she provided health care services to a Country insured, and that Country discounted her claim for reimbursement in accord with the terms of her PPO agreement with Corvel. *See* Compl. ¶¶ 40-44 & Ex. 1. Roche alleges that the claim was not subject to a preferred provider plan under the relevant Country automobile insurance policy. *See id.* ¶ 3, ¶ 7, ¶

---

1. Generally speaking, a PPO is, of course, a type of managed care organization in which health care providers contract with an insurer or a third-party administrator to provide health care at reduced rates to the insurer's or administrator's clients in return for benefits like a higher volume of client referrals by the insurer or administrator. *See Levine v. Central Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1546 (11th Cir. 1996) (noting that medical providers in a PPO agree to accept maximum fees and utilization review and quality control oversight because membership may increase their number of patients); *HCA Health Servs. of Va. v. Metropolitan Life Ins. Co.*, 957 F.2d 120, 122 (4th Cir. 1991) ("A PPO is a group of selected health care providers that agrees to charge lower rates on services in exchange for attracting a greater number of patients."); *FTC v. Tenet Healthcare Corp.*, 17 F. Supp. 2d 937, 940 (E.D. Mo. 1998) ("PPOs provide their participants with incentives to use in-network health care providers by reimbursing a lower percentage of the fees . . . if the individual chooses to use an out-of-network provider."); *Gavin N. Sherwood Chiropractic Clinic, A.P.C. v. Brower*, 838 F. Supp. 274, 275 (M.D. La. 1993) ("A PPO is a contractual agreement between a health care provider and an employer. Pursuant to such an agreement, the health care provider offers services to the employer's employees at reduced rates. In turn, the employer encourages its employees, as participants of the plan, to use the preferred providers designated by the PPO."); *Ball Mem'l Hosp., Inc. v Mutual Hosp. Ins., Inc.*, 603 F. Supp. 1077, 1078 (S.D. Ind. 1985) ("The concept of PPO is to provide subscribers with incentives to use those providers of health care services who hold potential for reducing the rate of increase in health care benefit costs. Two key characteristics in combination differentiate PPO's from other forms of health care coverage: (1) subscribers are given incentives to use a limited panel of providers, but retain freedom of choice to use other qualified providers, and (2) preferred providers are defined by specific health care cost containment characteristics, such as competitive charges and participation in utilization control programs.").

12, ¶ 16. Roche alleges that, pursuant to a so-called "silent PPO" scheme, Country was able to access Corvel's network of providers and schedule of discounts, and used this access to discount claims for reimbursement by providers like Roche, in return for remitting a percentage of the discounted amounts to Corvel. *See id*. ¶¶ 12-17. In her complaint Roche alleges violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1-505/12 ("ICFA"), fraud, unjust enrichment, and civil conspiracy, *see* Compl. ¶¶ 77-119, and seeks to represent a class defined as "All licensed healthcare providers in Illinois who: (a) submitted medical claims to Country; (b) received or were tendered partial payment but in an amount less than the submitted medical expenses based on a Corvel PPO discount[;] and (c) received or were tendered an amount less than the stated policy limits." *Id*. ¶ 63. Having reviewed the record carefully, the Court concludes that this case is due to be remanded to state court for lack of subject matter jurisdiction.

## DISCUSSION

Under CAFA, federal courts have jurisdiction in diversity over class actions and putative class actions commenced on or after February 18, 2005, involving one hundred or more class members in which any member of the plaintiff class is a citizen of a state different from that of any defendant, and in which, after aggregating all claims of the members of a class or proposed class, an amount in excess of $5 million, exclusive of interest and costs, is in controversy. *See* 28 U.S.C. § 1332(d)(1)(B), (d)(2)(A), (d)(5)(B), (d)(6), (d)(8); *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir. 2006); *Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755, 758 (7th Cir. 2006); *Pfizer, Inc. v. Lott*, 417 F.3d 725, 726 (7th Cir. 2005); *Kitson v. Bank of Edwardsville*, Civil No. 06-528-GPM, 2006 WL 3392752, at *2 (S.D. Ill. Nov. 22, 2006); *Buller Trucking Co. v. Owner Operator Indep. Driver Risk Retention Group, Inc.*, 461 F. Supp. 2d 768, 772

(S.D. Ill. 2006).[2] Class actions filed in state court on or after the effective date of CAFA in which the statutory prerequisites for jurisdiction are met may be removed to federal court. *See* 28 U.S.C. § 1453(b); *Phillips v. Ford Motor Co.*, 435 F.3d 785, 786 (7th Cir. 2006); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 749 (7th Cir. 2005); *Schillinger v. 360Networks USA, Inc.*, Civil No. 06-138-GPM, 2006 WL 1388876, at *2 (S.D. Ill. May 18, 2006). A removing defendant has the burden of establishing that the prerequisites for the exercise of federal jurisdiction on removal under CAFA are satisfied, and doubts as to the propriety of such removal must be resolved in favor of remand to state court. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005); *Kitson*, 2006 WL 3392752, at *1; *In re General Motors Corp. Dex-Cool*, No. Civ. MDL-03-1562-GPM, Civ. 05-10008-GPM, 2006 WL 2818773, at *1 (S.D. Ill. Sept. 27, 2006).

In this instance the parties do not dispute, and the record shows, that this is an action commenced after the effective date of CAFA in which an amount in excess of $5 million, exclusive of interest and costs, is in controversy. *See* Notice of Removal ("Notice"), Ex. C ¶¶ 5-6.[3] What is at issue here is whether CAFA's requirement of minimal diversity of citizenship is met. It is

---

2. As the Court noted in its June 12 order to show cause, the citizenship of a natural person for purposes of diversity jurisdiction under CAFA is determined by that person's domicile, that is, the place where the person is physically present with the intent to remain there. *See Kitson*, 2006 WL 3392752, at *6. With respect to business organizations, the citizenship of both corporations and unincorporated associations is determined by (1) the state under the law of which they are organized and (2) the state where they maintain their principal place of business. *See* 28 U.S.C. § 1332(c)(1), (d)(10).

3. The Court's June 12 order mistakenly stated that this action was commenced in 2005. This is incorrect. The action filed by Roche against Corvel in 2005 in the St. Clair County circuit court, *Roche v. Corvel Corp.*, No. 05-L-101 (Ill. Cir. Ct. filed Feb. 15, 2005), *see* Notice, Ex. G, is entirely separate from this action.

undisputed that both Roche and Country are Illinois citizens for diversity purposes, *see* Compl. ¶ 7; Notice ¶ 12, while the proposed class is drawn to include only Illinois citizens.[4] Country argues that the requisite minimal diversity of citizenship exists in this case because Corvel, a citizen of Delaware and California, *see* Notice ¶ 11, must be joined as a party defendant by virtue of being both a real party in interest and a person needed for just adjudication of this action within the meaning of Rule 19 of the Federal Rules of Civil Procedure.

---

4.   As noted, the class is drawn to include only "licensed healthcare providers in Illinois" who submitted claims for reimbursement that were discounted by Country in accordance with the silent PPO scheme alleged in the complaint, Compl. ¶ 63, and the complaint specifically disclaims the existence of diversity jurisdiction under CAFA on the grounds that the "the proposed class consists only of medical providers within Illinois." *Id.* ¶ 5. It is possible, of course, that the class might include health care providers who are citizens of states other than Illinois. For example, health care providers that are business entities might have dual citizenship in both Illinois and other states, just as health care providers that are natural persons might be licensed in Illinois yet domiciled in another state. Country does not dispute that the proposed class is limited to Illinois citizens, and at this juncture, of course, Country does not get the benefit of the doubt as to whether the requirements for the exercise of federal subject matter jurisdiction are met. Instead, the Court must resolve doubts against removal, as discussed, and must construe Roche's allegations in the light most favorable to her and remand. *See McNichols v. Johnson & Johnson*, 461 F. Supp. 2d 736, 742 n.2 (S.D. Ill. 2006). Accordingly, the Court concludes that Roche's allegations sufficiently restrict the proposed class to Illinois citizens. Also, even were there a dispute as to whether the class includes non-Illinois citizens, Country, which, as noted, has the burden of proof in this instance, has not produced any evidence of this. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) (holding that, when material jurisdictional facts are put into controversy, this places the burden on the party asserting the existence of federal subject matter jurisdiction to prove such facts by a preponderance of the evidence). Naturally, if further discovery in state court were to disclose evidence that non-Illinois citizens are members of the class, Country would be entitled to remove on this basis. *See, e.g., Coleman v. Southern Norfolk*, 734 F. Supp. 719, 721 & n.3 (E.D. La. 1990) (remanding a case on the grounds that the defendant failed to show that the requirements for the exercise of federal diversity jurisdiction were satisfied, but noting that if further discovery in the case in state court after remand showed that jurisdictional prerequisites were met, such discovery would constitute "other paper" authorizing removal within the meaning of 28 U.S.C. § 1446(b)). However, it is possible also that Roche's counsel could block any such removals by redrafting the class definition, stipulating to certain limitations on the class definition, and so forth. *See, e.g., Smith v. Pfizer, Inc.*, No. 05-CV-0112-MJR, 2005 WL 3618319, at **3-4 (S.D. Ill. Mar. 24, 2005) (explaining that a binding stipulation or affidavit filed with a complaint is effective to waive a recovery in excess of the jurisdictional minimum amount for diversity purposes).

The Court recognizes, of course, that as a general rule diversity jurisdiction must exist both when a suit is filed and when it is removed to federal court, *see Vogel v. Merck & Co.*, 476 F. Supp. 2d 996, 1006 n.6 (S.D. Ill. 2007) (citing *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776-77 (7th Cir. 1986)), and that in evaluating the existence of diversity jurisdiction in a removed case a court normally must disregard post-removal events. *See Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993) (in determining the existence of federal subject matter jurisdiction in a case removed from state court, "[w]e look to the facts that existed at the time of removal to determine our jurisdiction, for a plaintiff . . . may not manipulate the process . . . to defeat federal jurisdiction and force a remand once the case has been properly removed."); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 367 (7th Cir. 1993) ("[J]urisdiction depends on the situation at the time of removal, and . . . once a case is successfully removed a plaintiff cannot do anything to defeat federal jurisdiction and force a remand.") (citations omitted).  This rule is subject to the important qualification, however, that a court may consider any post-removal event that sheds light on the existence of federal subject matter jurisdiction when a case was filed or removed. *See Harmon v. OKI Sys.*, 115 F.3d 477, 479-80 (7th Cir. 1997) (in evaluating the existence of diversity jurisdiction in a case removed from state court, a district court did not err considering the plaintiffs' responses to post-removal interrogatories to determine whether the jurisdictional amount in controversy was satisfied).

It is well settled that, where a non-diverse party is required to be joined under Rule 19, a district court is placed in effectively the same position as though jurisdiction never existed. "Although jurisdiction will not be ousted by a subsequent change in parties who are ancillary to the suit and whose presence . . . is not essential to an adjudication on the merits, a change in parties that

goes to the very essence of the district court's ability to adjudicate the merits of the dispute effectively – most notably the addition of indispensable parties – may destroy it." 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice & Procedure* § 3723 (3d ed. 1998 & Supp. 2007) (footnotes omitted) (collecting cases). *See also Vasilakos v. Corometrics Med. Sys., Inc.*, No. 93 C 5343, 1993 WL 390283, at *2 (N.D. Ill. Sept. 30, 1993) (a post-removal joinder of a mandatory non-diverse party requires remand, whereas leave to join non-mandatory parties that defeat diversity after removal is discretionary). The Court has not been able to locate a case that addresses the precise issue presented by this case, namely, whether post-removal joinder of a mandatory party can create minimal diversity of citizenship for CAFA purposes. However, the Court sees no principled distinction between, on the one hand, destruction of jurisdiction by the joinder of a mandatory party and, on the other hand, creation of jurisdiction by such joinder. Accordingly, the Court concludes that Country's argument for federal subject matter jurisdiction does not violate the rule that the existence of such jurisdiction must be evaluated as of the time of removal and will proceed to address the argument on its merits.

Turning first to the question of whether, as a real party in interest, Corvel must be joined, the Supreme Court of the United States clarified recently that the requirement set out in Rule 17 of the Federal Rules of Civil Procedure that "[e]very action shall be prosecuted in the name of the real party in interest" generally has no bearing on the scope of federal subject matter jurisdiction, save in a narrow class of cases where there has been collusion to manufacture federal jurisdiction or a nominal party has been joined to defeat such jurisdiction. *Lincoln Prop. Co. v. Roche*, 126 S. Ct. 606, 613-14 (2005) (quoting Fed. R. Civ. P. 17(a)) (emphasis omitted). Technically Rule 17 has no bearing at all on the joinder of defendants, only plaintiffs. "[T]he real party in interest principle is

a means to identify the person who possesses the right sought to be enforced. Therefore, the term directs attention to whether [the] plaintiff has a significant interest in the particular action he has instituted, and Rule 17(a) is limited to plaintiffs." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1542 (collecting cases). As a matter of federal common law, however, courts sometimes invoke the real party in interest rule in situations where the joinder of merely nominal defendants is an obstacle to federal jurisdiction. *See, e.g., Wormley v. Wormley*, 21 U.S. (8 Wheat.) 421, 451 (1823) ("This Court will not suffer its jurisdiction to be ousted by the mere joinder or non-joinder of formal parties; but will rather proceed without them, and decide upon the merits of the case between the parties, who have the real interests before it, whenever it can be done without prejudice to the rights of others."); *Jones v. Griffith*, 870 F.2d 1363, 1366 (7th Cir. 1989) (assuming for the sake of argument that service of a complaint for medical malpractice on a state insurance commissioner and on the chairman of a state medical review panel, as required by state law, rendered those persons parties to a litigation, they were purely nominal parties with no stake in the litigation whose citizenship did not defeat diversity jurisdiction).

In general, a nominal party is simply a stakeholder in a litigation. As this Court explained recently, "[a] . . . nominal defendant . . . is a person who can be joined to aid the recovery of relief without an assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of litigation." *Yount v. Shashek*, 472 F. Supp. 2d 1055, 1061 (S.D. Ill. 2006) (quoting *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991)). "A nominal defendant holds the subject matter of the litigation . . . in a subordinate or possessory capacity as to which there is no dispute . . . . Because the nominal defendant is a . . . trustee, agent, or depositary, . . . who has possession of the funds which are the subject of litigation, he must often be joined purely as a means

of facilitating collection." *Id*. *See also Matchett v. Wold*, 818 F.2d 574, 576 (7th Cir. 1987) ("The addition to a lawsuit of a purely nominal party – the holder of the stakes of the dispute between the plaintiff and the original defendant – does not affect diversity jurisdiction."). In this case it is clear that Country is not merely a stakeholder or otherwise a nominal party to this dispute. While Corvel certainly would be an appropriate party to join in this action, the Court is not aware of any authority that compels a plaintiff to join all defendants who are real parties in interest to a dispute. To the contrary, "if [a] named party's interest is real, the fact that other interested parties are not joined 'will not affect the jurisdiction of the . . . federal courts[.]'" *Lincoln Prop. Co.*, 126 S. Ct. at 615 (quoting *Little v. Giles*, 118 U.S. 596, 603 (1886)). *See also Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) ("[P]laintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum."); *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 110 (3d Cir. 1990) (noting that, although a plaintiff's decisions regarding joinder of parties "may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with this inevitable consequence of a plaintiff's election" in the absence of collusive joinder to invoke federal jurisdiction in violation of 28 U.S.C. § 1359 or fraudulent joinder to defeat diversity).

Having determined that the real party in interest rule does not mandate the joinder of Corvel, the Court turns to Country's argument that Corvel must be joined under Rule 19.[5] The clear import

---

5. Rule 19 provides, in pertinent part,

    A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence

of the allegations of Roche's complaint is that Country and Corvel have engaged in a course of joint wrongdoing that has caused injury to Roche and similarly situated health care providers. It is extremely well settled that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit" and that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (quoting Fed. R. Civ. P. 19 advisory committee's note). *See also Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.*, 391 F.3d 872, 877 (7th Cir. 2004) (noting the settled common-law rule that joint tortfeasors are not mandatory parties to an action against them; instead, "the victim of a tort is entitled to sue any of the joint tortfeasors and recover his entire damages from that tortfeasor."); *Hammond v. Clayton*, 83 F.3d 191, 195 (7th Cir. 1996) (because a plaintiff can recover all of his or her damages from any or all of the tortfeasors responsible for an injury, a tortfeasor not joined in a suit is not a person in whose absence complete relief cannot be accorded within the meaning of Rule 19 and therefore is not an indispensable party to the action); *Cognis Corp. v. CHEMCENTRAL Corp.*, 430 F. Supp. 2d 806, 809 (N.D. Ill. 2006) (it is not necessary for all joint tortfeasors to be named as defendants in single lawsuit); *Hess v. Gray*, 85 F.R.D. 15, 21 (N.D. Ill. 1979) (because "the liability of joint tort-feasors is both joint and several, . . . while the joinder of joint tort-feasors is permissible, it is not compulsory.").

---

> may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party[.]

Fed. R. Civ. P. 19(a).

As a corollary of the rule that joint tortfeasors are not mandatory parties who must be joined under Rule 19, co-conspirators are not deemed to be mandatory parties either. "[C]oconspirators, like other joint tort-feasors, will not be deemed indispensable parties." 7 Wright, Miller & Kane, *Federal Practice & Procedure* § 1623 (collecting cases). *See also Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 329-30 (1955) (members of an alleged conspiracy to monopolize the business of distributing motion picture accessories were, as joint tortfeasors, not indispensable parties to an antitrust suit); *Georgia v. Pennsylvania R.R. Co.*, 324 U.S. 439, 463 (1945) ("In a suit to enjoin a conspiracy not all the conspirators are necessary parties defendant."); *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501 n.10 (7th Cir. 1980) ("Prior to the 1966 amendments to Rule 19, coconspirators were not indispensable parties, . . . and the 1966 amendments did not alter this established principle."); *Harley-Davidson Motor Co. v. Chrome Specialties, Inc.*, 173 F.R.D. 250, 253 (E.D. Wis. 1997) ("It is well established that co-conspirators . . . are not indispensable parties under Rule 19(a)."). *Accord Herpich v. Wallace*, 430 F.2d 792, 817 (5th Cir. 1970) (noting "the well-established authority to the effect that joint tortfeasors or coconspirators are not persons whose absence from a case will result in dismissal for non-joinder"); *Philip Morris Capital Corp. v. Century Power Corp.*, 788 F. Supp. 794, 796-97 (S.D.N.Y. 1992) (quoting *Samaha v. Presbyterian Hosp. in City of N.Y.*, 757 F.2d 529, 531 (2d Cir. 1985)) (a non-diverse defendant was not an indispensable party to claims for breach of contract and fraud where the non-diverse defendant was alleged to be jointly and severally liable with diverse defendants in an alleged fraud and conspiracy to commit fraud: "[I]t is settled federal law that joint tortfeasors are not indispensable parties"); *Grumman Sys. Support Corp. v. Data Gen. Corp.*, 125 F.R.D. 160, 165 (N.D. Cal. 1988) ("The AMI defendants are alleged to be antitrust co-conspirators of [the defendant]. As such, they are not

indispensable parties to the antitrust action under Rule 19."); *Beckham v. Grand Affair of N.C., Inc.*, 671 F. Supp. 415, 420-21 (W.D.N.C. 1987) (police officers with whom a plaintiff's former employer allegedly conspired to have the plaintiff arrested in violation of her civil rights were not necessary parties to the plaintiff's action against her former employer, and thus were not indispensable).

  In attempting to show that Corvel must be joined pursuant to Rule 19, Country seeks to rework this case into a contract action, invoking the familiar principal that "[i]n cases seeking reformation, cancellation, rescission, or otherwise challenging the validity of a contract, all parties to the contract" generally must be joined under the rule. 7 Wright, Miller & Kane, *Federal Practice & Procedure* § 1613 (footnotes omitted) (collecting cases). However, this is not such a suit. It is undisputed that Country has no contractual relationship with Roche and in fact the existence of any such contract covering the subject matter of this litigation would be fatal, of course, to Roche's claim for unjust enrichment. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985) ("Under Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties."); *Samuels v. Old Kent Bank*, No. 96 C 6667, 1997 WL 458434, at *14 (N.D. Ill. Aug. 1, 1997) (quoting *F.H. Prince & Co. v. Towers Fin. Corp.*, 656 N.E.2d 142, 151 (Ill. App. Ct. 1995)) ("Since the doctrine of unjust enrichment presents an implied or quasi-contract claim, where there is a specific contract which governs the relationship of the parties, the doctrine has no application."). The gist of Country's argument that the claims in this case are essentially contractual in nature, thereby triggering the rule concerning mandatory joinder of contracting parties, is simply that Roche's claims against the insurer are bootstrapped from her contract with Corvel. In Country's view, absent a contract with

Roche, the insurer was under no legal duty to refrain from utilizing Corvel's network in order to discount the health care provider's claims for reimbursement.[6] Ergo, Country argues, unless Roche can show that her contract with Corvel established such a duty, she has no claim against Country. The Court finds Country's reliance on common-law principles of joinder in contract cases more than a little disingenuous, in light of the insurer's vigorous insistence that it has no liability to Roche in the absence of a contract with her. Similarly, the Court does not agree that Country has no liability to Roche independent of her contract with Corvel. If, for example, Country falsely represented that it had a right to take PPO discounts notwithstanding the fact that it does not offer preferred provider plans under applicable insurance policies, as Roche alleges, the Court fails to see why this could not form the basis for a claim of statutory fraud. *See Brown v. SBC Communications, Inc.*, No. 05-cv-777-JPG, 2007 WL 684133, at **1-4 (S.D. Ill. Mar. 1, 2007) (citing *Saltzman v. Enhanced Servs. Billing, Inc.*, 811 N.E.2d 191, 197, 199-200 (Ill. App. Ct. 2003)) (allegations that consumers were billed for telecommunications services they did not order stated a claim for statutory fraud under ICFA); *People v. Stianos*, 475 N.E.2d 1024, 1028-29 (Ill. App. Ct. 1985) (charging consumers sales taxes they did not owe was statutory fraud under ICFA).[7]

---

6. As Country puts it in its response to the Court's order to show cause, "[P]laintiff alleges no agreement or authority governing how and when Country Mutual may apply PPO discounts, nor does she allege any direct contract between herself and Country Mutual, nor any other source for any duty Country Mutual allegedly owes her." Doc. 13 at 5.

7. The Court assumes, without deciding, that the statutory fraud claims in this case possess the requisite "consumer nexus" for purposes of standing under ICFA. In general, of course, where, as here, an ICFA claim is brought by a party that is not a "consumer" within the meaning of the statute, *see* 815 ILCS 505/1(e), standing to sue is tested by whether alleged violations of the statute involve trade practices addressed to the market generally or otherwise implicate consumer protection concerns. *See Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 40-41 (Ill. App. Ct. 1989). Presumably, falsely holding oneself out as offering consumers health insurance on a PPO basis without in fact furnishing the benefits normally

In sum, the Court holds that Rule 19 does not mandate joinder of Corvel, so that minimal diversity of citizenship does not exist in this case.[8]  Because the prerequisites for the exercise of diversity jurisdiction under CAFA do not exist, the Court does not reach the question of whether this action comes within the so-called "local controversy exception" or "home-state exception" to federal diversity jurisdiction under CAFA.[9]  Those portions of the statute provide for abstention, which means that they presuppose the existence of subject matter jurisdiction.  *See Hart v. FedEx Ground*

---

associated with a PPO, such as reduced co-payments and deductibles, *see HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 1002-03 & n.43 (11th Cir. 2001), would satisfy the consumer nexus requirement.  *See Gadson v. Newman*, 807 F. Supp. 1412, 1421 (C.D. Ill. 1992) (allegations that deceptive trade practices increased health care costs satisfied the consumer nexus requirement for standing under ICFA).

8.   The Court notes that Country does not argue that non-joinder of Corvel will jeopardize any agreements Country has with Corvel, and Roche does not argue that Country has entered any agreements with Corvel for Roche's benefit.  Therefore, the Court does not consider what bearing, if any, such circumstances would have on whether Corvel is required to be joined under Rule 19.  Also, the Court has not been directed to any relevant contract between Corvel and Country.  A contract between Corvel and Country is part of Exhibit F to Country's notice of removal, but the record is unclear as to what relationship the contract might have to Roche's claims.  *See Disher v. Citigroup Global Mkts., Inc.*, Civil Nos. 07-132-GPM, 07-185-GPM, 2007 WL 1357112, at *6 (S.D. Ill. May 3, 2007) (citing *Vogel*, 476 F. Supp. 2d at 1000-01) (deficiencies in the record of a removed case must be resolved against removal).

9.    Under the local controversy exception to CAFA, a district court must decline to exercise jurisdiction over a class action if a plaintiff proves all of the following elements:  (1) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the state in which the action was originally filed; (2) at least one defendant is a defendant from whom significant relief is sought, whose alleged conduct forms a significant basis for the claims asserted, and who is a citizen of the state in which the action was originally filed; (3) the principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the state in which the action was originally filed; and (4) no other class action has been filed against any of the defendants asserting the same or similar factual allegations during the three-year period preceding the filing of the class action.  *See Kitson*, 2006 WL 3392752, at *5 (citing 28 U.S.C. § 1332(d)(4)(A)).  The home-state exception to CAFA provides that a district court shall decline jurisdiction where "[t]wo-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  *Id*. at *13 (quoting 28 U.S.C. § 1332(d)(4)(B)).

*Package Sys. Inc.*, 457 F.3d 675, 679-82 (7th Cir. 2006) (holding that, where a removing defendant meets its burden of proving the existence of federal subject matter jurisdiction under CAFA, the burden shifts to a plaintiff to prove that an exception to CAFA jurisdiction applies); *Kitson*, 2006 WL 3392752, at *4 (same). *See also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022-24 (9th Cir. 2007) (the local controversy and home-state controversy provisions of CAFA provide exceptions to federal subject matter jurisdiction under the statute, not *prima facie* elements that must affirmatively be shown by a party seeking to establish such jurisdiction in the first instance). Because the Court concludes that Country has not shown the existence of subject matter jurisdiction, the Court need not address exceptions to such jurisdiction.

The Court notes that the result it reaches in this case is consistent both with the language of CAFA and with one of the fundamental policies underlying the statute, namely, ensuring that interstate class actions are heard in federal court. A basic purpose of CAFA is to "restore the intent of the framers of the United States Constitution by providing for Federal Court consideration of interstate cases of national importance under diversity jurisdiction[.]" *Yeroushalmi v. Blockbuster, Inc.*, No. CV 05-225-AHM(RCX), 2005 WL 2083008, at *3 (C.D. Cal. July 11, 2005) (quoting Pub. L. 109-2, § 2(b)(2), 119 Stat. 4). *See also Mattera v. Clear Channel Communications, Inc.*, No. 06 Civ. 01878(DC), 2006 WL 3316967, at *10 (S.D.N.Y. Nov. 14, 2006) ("Congress, through enactment of CAFA, sought to encourage federal jurisdiction over interstate class actions."). Disputes that, as here, involve only the citizens of a single state are matters properly of state concern. In the Court's experience, class-action attorneys frequently forego the opportunity afforded by CAFA to reserve for cases a state forum by restricting claims in the manner presented by this case. This may be because the economies of scale involved in class litigation, that is, the expense

and time involved in maintaining such cases, make it imperative to seek large, multistate classes, or because in small class actions narrowly restricted to claims between citizens of a single state it perhaps is difficult to ratchet up the kind of bet-the-company pressure that brings class-action defendants to the settlement table. *See In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1298-1300 (7th Cir. 1995). Whatever the reason, where, as here, a class action is tailored to avoid even minimal diversity of citizenship, it is not within the scope of federal subject matter jurisdiction under CAFA. The constitutional plan contemplates that matters of purely local concern, like class actions wholly among citizens of a single state, will be decided in state court, leaving federal courts to address matters of national concern. *See City of Indianapolis v. Chase Nat'l Bank of City of N.Y.*, 314 U.S. 63, 76 (1941) (limitations on the exercise of federal diversity jurisdiction "reliev[e] the federal courts of the overwhelming burden of . . . business that intrinsically belongs to the state courts . . . in order to keep them free for their distinctive federal business.").

As a final matter, the Court regards Country's arguments for the existence of federal subject matter jurisdiction fairly frivolous, in light of the settled principles concerning joinder of joint tortfeasors under Rule 19 discussed *supra*. In fact, the Court is strongly inclined to hold that the removal in this instance was objectively unreasonable so as to warrant an award of costs and expenses, including attorney fees, under 28 U.S.C. § 1447(c). *See Hauck v. ConocoPhillips Co.*, Civil No. 06-135-GPM, 2006 WL 1596826, at *10 (S.D. Ill. June 6, 2006) (costs and expenses may be awarded under Section 1447(c) where a removal lacks an objectively reasonable basis); *Orbitz, LLC v. Worldspan, L.P.*, 425 F. Supp. 2d 929, 933 (N.D. Ill. 2006) (same); *Impact Gel Corp. v. Rodeen*, No. 05-C-223-C, 2005 WL 3555422, at *2 (W.D. Wis. Dec. 27, 2005) (same). However, the United States Court of Appeals for the Seventh Circuit clarified recently that the test of objective

reasonableness of removal is similar to the test of qualified immunity in the context of civil rights cases. That is, a removal will be deemed objectively unreasonable only if it violates "clearly established" law. *Lott v. Pfizer, Inc.*, No. 06-3372, 2007 WL 1804261, at *3 (7th Cir. June 25, 2007). *Cf. Cunningham v. Snyder*, 472 F. Supp. 2d 1023, 1026 (S.D. Ill. 2006) (discussing the general rule that governmental officials are entitled to qualified immunity for harm caused by official acts that do not violate clearly established constitutional norms). Importantly, objective unreasonableness is established only by controlling authority; thus, for example, "[d]istrict court decisions . . . do not render the law clearly established." *Lott*, 2007 WL 1804261, at *3. As the Court has noted, it has been unable to find any judicial decision, much less a controlling one, addressing the issue of whether mandatory joinder can be employed to create minimal diversity of citizenship for purposes of removal under CAFA. Accordingly, the Court cannot conclude that the removal in this instance was objectively unreasonable and thus declines in its discretion to impose costs and expenses under Section 1447(c). *See Brooks v. Merck & Co.*, 443 F. Supp. 2d 994, 1006 (S.D. Ill. 2006); *Hauck*, 2006 WL 1596826, at *10.

## CONCLUSION

Pursuant to 28 U.S.C. § 1447(c) this action is **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

DATED: 7/6/07

s/ *G. Patrick Murphy*
G. Patrick Murphy
Chief United States District Judge